E-FILED
Thursday, 05 June, 2008  02:25:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| PLUMBERS & PIPEFITTERS LOCAL 99 FRINGE BENEFIT FUNDS, and PLUMBERS & PIPEFITTERS NATIONAL PENSION FUND, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No. 05-1223 |
| ROBERT E. WATKINS d/b/a UNION PLUMBING and UNION PLUMBING, HEATING, and ELECTRIC, | ) ) ) ) |
| Defendants. | ) |

# ORDER

Before the Court is Plaintiffs', Plumbers & Pipefitters Local 99 Fringe Benefit Funds and Plumbers & Pipefitters National Pension Fund, Supplemental Motion for Default Judgment against Defendants Robert E. Watkins d/b/a Union Plumbing and Union Plumbing, Heating, and Electric pursuant to Rule 55 of the Federal Rules of Civil Procedure. The Motion now is fully briefed, and the Court conducted an evidentiary hearing on March 11, March 19, and April 1 to receive evidence and hear arguments. For the reasons set forth below, the Supplemental Motion for Default Judgment [#13] is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

The Court has original jurisdiction over the case pursuant to 28 U.S.C. § 1331 because the claims asserted in the Complaint arise under the Employee Retirement

Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980.

## BACKGROUND

1. Plaintiffs Plumbers & Pipefitters Local 99 Fringe Benefit Funds and Plumbers & Pipefitters National Pension Fund (collectively, "Funds") are employee benefit plans administered pursuant to the terms and provisions of the Agreements and Declarations of Trust creating these Funds and are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 (as amended), 29 U.S.C. §§ 1001 *et seq*.

2. Defendants Robert E. Watkins and Union Plumbing, Heating, and Electric (collectively, "Union Plumbing") are Employers engaged in an industry within the meaning of ERISA, 29 U.S.C. §§ 1002(5), (11), (12), and (14). Union Plumbing employs individuals who are members of, and represented by Plumbers Local 99, a local labor organization, and said individuals are participants in the Funds' employee benefit fund pursuant to a collective bargaining agreement (the National Mechanical Equipment Service and Maintenance Agreement*)* by and between Union Plumbing and Plumbers Local 99 and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada.

3. Union Plumbing manifested assent to be bound by the terms of that agreement and successor collective bargaining agreements that require Union Plumbing to remit fringe benefit contributions to the Funds.

4. Union Plumbing never terminated the collective bargaining agreement.

5.  Union Plumbing submitted monthly contribution reports and payments in which Union Plumbing affirmed and declared that it had a contractual contribution obligation to the Funds.

6.  Union Plumbing was required to make contributions to the Funds in accordance with the terms and conditions of the Funds' agreements and declarations of trust. Under the agreements and declarations of trust, Union Plumbing is liable for twelve percent interest per annum on unpaid contributions, liquidated damages calculated as ten percent of actual damages, attorney fees, and audit costs.

7.  On August 4, 2005, the Funds filed the Complaint seeking damages for unpaid contributions and seeking an audit to determine the amount of damages.

8.  On June 28, 2006, Magistrate Judge John A. Gorman granted the Funds' Motion for Entry of Default.

9.  By defaulting, Union Plumbing waived its right to raise defenses to the Complaint. Accordingly, Watkins and Union Plumbing, Heating, and Electric are bound by any collective bargaining agreement or participation agreement with the Funds.

10.  The Funds sought an audit for the period from January 1, 2002 through December 31, 2005, as to wages received and hours worked by Union Plumbing's employees to determine amounts required to be paid to Funds.

11.  On February 20, 2007, Plaintiffs filed their Supplemental Motion for Default Judgment, based upon the initial audit conducted by Romolo and Associates. In addition to other relief, they sought $159,707.20 in claimed unpaid contributions.

12.  On April 24, 2007, the Court noted that Union Plumbing must be given the opportunity to challenge the Plaintiffs' calculation of actual damages, namely the

amount of contributions due to the Funds based on covered employees performing covered work, as those terms are defined in the governing collective bargaining agreement.

13. On September 11, 2007, the parties filed a Joint Motion for Payroll Compliance Audit/Accounting, with the original auditor to specifically review additional documents produced to the Funds. Such re-audit was completed.

14. Based on the revised audit, the Funds claim that $77,987.15 is due to the National Pension Fund, and that $56,051.06 is due to the Local 99 Fringe Benefit Funds. The total claimed due is $134,038.21.

15. During the audit, auditor Tom Crotz visited Union Plumbing, Heating and Electric and was told verbally the scope of each employer's work. While Union Plumbing conceded that some individuals performed covered plumbing work, it alleged other workers performed electrical, telephone, general labor, and HVAC (heating, ventilation, and air conditioning) work. The hours for these other workers are challenged in this case.

**DISCUSSION**

**A.   Record-Keeping Obligation**

16. Pursuant to ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. "Section 515 was intended to 'permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-

management relations law." *Laborers' Pension Fund v. A&C Envtl., Inc.*, 301 F.3d 768, 778 (7th Cir. 2002).

17. Pursuant to ERISA, employers must "maintain records with respect to each [employee] sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1).

18. An employer's obligation to maintain records to determine benefits due includes maintaining contemporaneous time records reflecting the type of work performed, the date the work was performed, and the work location. *See Laborers' Pension Fund v. RES Envtl. Serv., Inc.,* 377 F.3d 735, 739 (7th Cir. 2004).

**B.  Burden of Proof for Damages**

19. Regarding a calculation of damages, the Funds have the burden of proof. *See Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 264-65 (7th Cir. 2003).

20. However, "[a]n employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required." *Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988).

21. When the employer's conduct prevents a precise calculation of damages, the trier of fact may "make a just and reasonable estimate of the damage based on relevant data." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S. Ct. 574 (1946). "Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim." *Id.* Failure to apply such a rule "would mean that the more grievous the wrong done, the less likelihood there would be of a recovery." *Id.*; *see also*

*BE&K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 770 (7th Cir. 1998).

22.     Although the Seventh Circuit rejected the Ninth Circuit's burden shifting to the employer in the absence of reliable records, the Seventh Circuit stated that a fund auditor's calculations are presumed correct, at least at the summary judgment stage, when the employer's time records are deficient.  *Reinke*, 347 F.3d at 264.

23.     The rates of pay set forth in Union Plumbing's payroll records do not constitute sufficient records to determine the benefits due because the records do not specifically reference the type of work performed by employees.

24.     Reconciling the Seventh Circuit's rejection of burden shifting with the policy underlying *Bigelow* and *Brick Masons*, the Court will allow an evidentiary inference based of the Funds' audit to make a "just and reasonable estimate" of damages.

25.     In the present case, the Court reviewed all evidence presented and calculated the total damages after presuming that the Funds' calculation of covered hours was correct.  Those damage calculations are reduced if the Funds failed to establish that Union Plumbing had an obligation to pay or if Union Plumbing presented credible evidence contrary to the inference.

26. Under the National Mechanical Equipment Service and Maintenance Agreement:

> All of the legally negotiated fringe benefit contributions, or deductions under the employees's home local union's agreement, shall be paid only to the Trustees of the Fringe Benefit Funds of his home local union provided, however, that the employee is not permanently assigned to an area outside the jurisdiction of his home local union for a period in excess of thirty (30) consecutive days.

(Plaintiffs' Exh. 3, ¶53.)

27. The Court received no evidence that any employee for whom contributions were claimed due was permanently assigned outside of Local 99.

**C.    Contract Provisions**

28. Plaintiffs' Exhibit 3 is entitled "National Mechanical Equipment Service and Maintenance Agreement."

29. The National Mechanical Equipment Service and Maintenance Agreement covers all work performed by Union Plumbing within the jurisdiction of the local unions affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO.

30. The scope of work in Plaintiffs' Exhibit 3 is set forth in section 7. Those provisions state as follows:

> a) This Agreement covers the rates of pay, fringe benefits, hours and working conditions of all Service Journeymen, Servicemen, Service Apprentices and Tradesmen, engaged in the performance of mechanical service and maintenance work normally performed by outside contractors, either by contracts or on an emergency call basis, who are equipped to handle all work relating to mechanical service and maintenance of all air conditioning, heating, ventilating, building automation, refrigeration, plumbing and/or piping systems or any other newly installed, remodeled or redesigned mechanical piping system and component thereof, including but not limited to, boilers, pumps, refrigeration equipment, fans, coils, cooling towers and controls. Service and maintenance shall include, but

not be limited to, all the maintaining, cleaning, adjusting, repairing, altering, overhauling, dismantling, reconditioning, replacing, modifying, renovating, evacuating, charging, inspecting, operating, starting, calibrating and balancing of any system or component part thereof, regardless of size or location, including all other service and maintenance work assigned to the Employer by the customer in a currently operating facility.  Temporary installed systems are to be considered service work.

b)   Any other work in the control of the Employer signing this Agreement that falls in the jurisdiction of the Union, but not in the scope as outlined herein as being operation or service and maintenance, shall be done in accordance with the prevailing building trades agreement of the local union having jurisdiction for that type of work.

31. There is nothing in the language of section 7 that establishes that the electrical, telephone, or general labor work of the type described as having been performed by Union Plumbing's employees was covered work.  Therefore, the Funds may not recover for any electrical, telephone, or general labor work.

32. The HVAC work that was described as having been performed by Defendants' HVAC workers was not mechanical service and maintenance work.  It is therefore not covered by section 7(a).  The HVAC work is not covered work under section 7(a) because it is not mechanical service and maintenance of air conditioning, heating or ventilating work that is service and maintenance of newly-installed, remodeled or redesigned systems or components.  The language of section 7(a), by using the word "other," shows that coverage under this paragraph is limited to servicing and maintaining already installed systems or components.  It does not include installation of those systems.

33. The HVAC work described by all witnesses involved the installation of those systems in newly-constructed apartment complexes.

34. Accordingly, none of the disputed hours are deemed covered work by virtue of section 7(a).

35. Because the Funds seemingly concede that section 7(a) does not apply with respect to any of the electrical, telephone, laborers and HVAC work, they rely upon section 7(b).

36. Section 7(b) incorporates "the prevailing building trades agreement of the local union having jurisdiction for that type of work."

37. The Funds introduced Exhibits 7, 8, and 9 (the Articles of Agreement and Addendum No. 1 to the Master Agreement between the Local Union No. 99 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada and the Bloomington-Normal Plumbing, Heating, Air Conditioning and Piping Contractors of the Territorial Jurisdiction of Local Union No. 99 for the various relevant time periods) as the "prevailing building trades agreement" governing the work performed by Union Plumbing.

38. Addendum No. 1 (Exhibits 7, 8, and 9) covers residential work set forth in section 3.1 and article V.  Section 3.1 of Addendum No. 1 to the Master Agreement incorporates all other work included in the trade jurisdiction of the United Association, as defined in the Constitution of the United Association.  The Funds presented Plaintiffs' Exhibit 10 (the Constitution of the United Association), which includes an exhaustive listing of the jurisdiction of work.

39. Although the Court agrees with the Funds that at least some of the disputed HVAC work was covered by the jurisdiction of work paragraphs in Exhibit 10, that Exhibit does not cover the time period at issue in this case.  The first page of the

Exhibit states "*Revised and Amended at Las Vegas, Nevada, August 7-11, 2006.*" Further, the Court cannot assume that the language of the "current Constitution" that governed from 2002-2005 was the same as the one produced for the period beginning in August, 2006. Accordingly, the Funds may not rely on Plaintiffs' Exhibit 10 for the expanded scope of work.

40. The Court notes that none of the allegedly material building trades agreements were attached to the Complaint or First Amended Complaint in this case. All that was attached was Plaintiffs' Exhibit 3, the National Mechanical Equipment Service and Maintenance Agreement. Despite this omission, this Court allowed the Funds to introduce Exhibits 7-10 (the Articles of Agreement and Addendums for the relevant time periods and the Constitution of the United Association) and a Demonstrative Exhibit 11. Given the opportunity to provide these documents, the Funds put in apparently what they believed would prove their case under section 7(b) ("the prevailing building trades agreement of the local union having jurisdiction for that type of work").

41. The Court cannot reopen the evidence at this point to allow the Funds to cure their evidence deficiency because the unfairness to Union Plumbing outweighs the benefit of having all evidence before the Court. Previously, the Court allowed the Funds to cure evidence deficiencies by reopening evidence and expanding the receipt of documentary evidence beyond what was set forth in the Complaint and First Amended Complaint. Plaintiffs were allowed to place into evidence Plaintiffs' Exhibit 3 (the primary collective bargaining agreement) after the close of the Funds' case-in-chief. The Court allowed the admission of Plaintiffs' Exhibits 7-10 (the Articles of Agreement

and Addendums for the relevant time periods and the Constitution of the United Association), which were not attached to the pleadings on which the order of default was entered, in order to allow the Funds to place all evidence before the Court. After the conclusion of the evidentiary hearing, the Court allowed the Funds to add to the record certain local building agreements from other jurisdictions. Despite these multiple opportunities to cure evidence deficiencies, the Funds failed to place all evidence before the Court that could allow the judgment in their favor that they request.

42. Without the expanded scope of covered work found in Plaintiffs' Exhibit 10, the Funds are limited to the scope of covered work as stated in section 3.1 of the Addendum (Plaintiffs' Exhibits 7, 8, and 9). Section 3.1 limits covered work to the installation of plumbing and/or pipefitting systems and component parts thereof. There was no testimony that indicated the challenged HVAC work involved installation of a pipefitting system or plumbing system. There was no connection in the evidence to plumbing or pipefitting from what the witnesses described the HVAC employees as performing.

43. Therefore, the Funds may not recover contributions claimed due for any employees performing HVAC work.

44. As shown on Plaintiffs' Demonstrative Exhibit 11, all references in Attachment B apply to commercial work. There is no evidence that Union Plumbing performed commercial work concerning the disputed hours. As shown in Attachment C, Plaintiffs' Exhibits 7, 8, and 9 define residential work as "applying to work on any single-family dwelling or multiple-family housing units up to and including (3) occupied stories from the ground level." The evidence revealed that all disputed work in this case was

performed on apartment complexes of three stories or less. Therefore, no commercial work was performed, and Attachment B to Plaintiffs' Demonstrative Exhibit 11 is irrelevant. Accordingly, Union Plumbing owes nothing for the claimed difference in hourly rates between commercial and residential work.

**D.     Unpaid Contributions**

45.     During the audit, Union Plumbing admitted that the following employees were plumbers: Brett Higgs, Terry Higgs, Jr., Robert Kline, Aaron Murray, Mike Watkins, William Collins, Troy Dwyer, Jason Hudson, Steve Tervin, Scott Purkey, and William R. Higgs.

46.     During the audit, Union Plumbing stated that Brian Wynn was an electrician.

47.     During the audit, Union Plumbing stated that Guy Craig was a telephone technician.

48.     During the audit, Union Plumbing stated that the following employees performed HVAC work: John Bagosy, Jeff Conroy, Matt Cullers, Daryl Fager, and Mike Seymour.

49.     During the audit, Union Plumbing stated that the following employees were general laborers: George Higgs and Tyler Simmons.

50.     The auditors reviewed monthly payroll registers (except for the fourth quarter of 2002, which could not be obtained from Union Plumbing), monthly union report forms, state unemployment tax forms (UC-3's), federal payroll tax forms (Forms 941, 940, and/or W-2), and other trades fringe benefit reports. Union Plumbing did not provide any job cost records or other contemporaneous records showing the actual

work performed by employees to the auditors or the Funds. The auditors testified that the records they reviewed were not detailed enough to confirm the employer's statement as to certain individuals performing uncovered electrical, telephone, general labor, or HVAC work.

51. The auditors concluded that the following plumbers performed commercial plumbing work because the pay rates for those plumbers were higher than the rates of pay for residential work and consistent with the commercial rates of pay under the applicable collective bargaining agreement: Brett Higgs, Mike Watkins, William Collins, Troy Dwyer, Jason Hudson, and William R. Higgs.

52. The auditors concluded that the hours worked by the following employees were covered by the collective bargaining agreement because there were insufficient records establishing that the work performed was not covered work: Brian Wynn, Guy Craig, John Bagosy, Jeff Conroy, Matt Cullers, Daryl Fager, Mike Seymour, George Higgs, and Tyler Simmons.

53. The Funds produced a spreadsheet on March 31, 2008 claiming unpaid contributions totaling $120,876.09. The second and third pages break down the amounts claimed due by year and type of contribution. It also breaks down the amounts by type of work represented by employer.

54. Union Plumbing stipulated that there was no dispute regarding the numbers in the audit (hours worked by employees, contribution rates, etc.), but Union Plumbing disputed whether the hours were covered by the collective bargaining agreement.

55. The Court notes that the Funds concede that the hours claimed due for George Higgs are not covered hours. This accounts for the discrepancy in contributions

claimed due between the total of $134,038.21 from Plaintiffs' Exhibits 1 and 2 and the $120,876.09.

56. Union Plumbing called as witnesses Jon Laverty, Tyler Simmons, Steve Stalter, Bobby Kline, Mike Watkins, Ricky Higgs, and Bob Watkins. In their Rebuttal, the Funds called Steve Rever and William Collins.

57. On March 31, 2008, the Funds filed a Status Report that included a detailed breakdown of the amounts due for each employee. The Court relies on this summary in its calculation of damages.

**The Court finds as follows:**

58. Guy Craig did only telephone work. Telephone work is not covered by any of the agreements offered in evidence. Therefore, his hours (and claimed due contributions of $9,557.62) are excluded and not recoverable by the Funds.

59. Brian Wynn did only electrical work. Electrical work is not covered by any of the agreements offered in evidence. Accordingly, his hours (and claimed due contributions of $2,772.25) are excluded and not recoverable by the Funds.

60. The auditors calculated some contributions due for hours they believed related to commercial work. The evidence demonstrates that there was no commercial work done because all of the projects at issue involved apartment buildings of less than three stories. Therefore, the Court excludes all contributions claimed due.

61. For some employees performing plumbing work, the parties dispute whether all time worked was for covered work. In the absence of contemporaneous records distinguishing the type of work performed by the employee, the Court finds that all time was spent performing covered work.

62. The relevant work performed by Brett Higgs was covered plumbing work. The Court does not find credible testimony that Higgs did not perform covered plumbing work between April 2003 and April 2004, in part because Union Plumbing reported some plumbing work for him during that time period. Subtracting the contributions claimed due for commercial work, for which there is no evidence before the Court, the total contributions due for Brett Higgs is $10,533.94.

63. The relevant work performed by Terry Higgs was covered plumbing work. The total contributions due for Terry Higgs is $2,422.82.

64. The relevant work performed by William Collins was covered plumbing work. Subtracting the contributions claimed due for commercial work, for which there is no evidence before the Court, the total contributions due for William Collins is $8,407.83.

65. The relevant work performed by Troy Dwyer was covered plumbing work. Subtracting the contributions claimed due for commercial work, for which there is no evidence before the Court, the total contributions due for Troy Dwyer is $869.22.

66. The relevant work performed by Jason Hudson was covered plumbing work. Subtracting the contributions claimed due for commercial work, for which there is no evidence before the Court, the total contributions due for Jason Hudson is $872.69.

67. The relevant work performed by Steve Tervin was covered plumbing work. The total contributions due for Steve Tervin is $1,685.41.

68. The relevant work performed by William R. Higgs was covered plumbing work, but all relevant work claimed is commercial work for which there is no evidence before the Court. Accordingly, the total contributions due for Williams R. Higgs is $0.

69. Some work performed by Robert Kline was covered plumbing work. The Court finds credible his testimony that he performed only HVAC work on the Columbus, Indiana, job in 2005. Subtracting the contributions claimed due for 2005, the total contributions due for Robert Kline is $1,869.37.

70. The relevant work performed by Aaron Murray was covered plumbing work. The total contributions due for Aaron Murray is $80.96.

71. The relevant work performed by Mike Watkins was covered plumbing work. Subtracting the contributions claimed due for commercial work, for which there is no evidence before the Court, the total contributions due for Mike Watkins is $10,898.66.

72. The relevant work performed by Scott Purkey was covered plumbing work. The Court does not find credible testimony that Purkey did not perform covered plumbing work, in part because Union Plumbing reported some plumbing work for him during that time period. The total contributions due for Scott Purkey is $206.76.

73. The parties dispute whether Tyler Simmons performed uncovered general labor or assisted plumbers with covered plumbing work. Simmons worked under the tutelage of George Higgs, a former plumber, and Brett Higgs, a plumber. Although Simmons did not have a plumbers' license during the applicable time period, there was evidence suggesting that his wage was similar to that of a plumber's apprentice. The Court finds Simmons's testimony that he did not perform any covered plumbing work less credible than William Collins's testimony that he did assist, at least part of the time, with covered plumbing work. The total contributions due for Tyler Simmons is $7,177.52.

74. The Court heard extensive evidence about HVAC work, including that HVAC installation involves the installation of duct work as well as the installation of drainage lines, wet lines, gas pipe, condensate, and refrigeration lines. As noted above in paragraphs 30 to 43, the Funds fail to demonstrate that this work was within the scope of coverage for the time period at issue in this case. Accordingly, the Funds may not recover the contributions claimed due for John Bagosy, Jeff Conroy, Matt Cullers, Daryl Fager, and Mike Seymour (totaling $44,794.59).

## CONCLUSION

For the reasons set forth herein, the Supplemental Motion for Default Judgment [#13] is GRANTED IN PART AND DENIED IN PART. Defendants are obligated to pay damages totaling $45,025.18 for unpaid contributions plus prejudgment interest at twelve percent. Plaintiffs are directed to provide to the Court an interest calculation within fourteen days. Defendants are obligated to pay liquidated damages totaling $4,502.52, which is ten percent of the total damages. Defendants are obligated to pay costs, audit costs, and reasonable attorney fees. Plaintiffs are directed to provide to the Court a calculation of costs, audit costs, and attorney fees within fourteen days, and Defendants are directed to file any objections within fourteen days thereafter. This matter is terminated.

ENTERED this 5th day of June, 2008.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge